1

2

3

4

5

6

7              # UNITED STATES DISTRICT COURT

8                   ## EASTERN DISTRICT OF CALIFORNIA

9

DORIAN M. AQUINO,                          CASE NO. 1:09-cv-00429-AWI-DLB PC

10

11                      Plaintiff,          FINDINGS AND RECOMMENDATIONS
                                            RECOMMENDING DEFENDANT'S
         v.                                 MOTION FOR SUMMARY JUDGMENT BE
12                                          GRANTED (DOC. 23)

R. JORDT, et al.,
13                                          OBJECTIONS, IF ANY, DUE WITHIN
                        Defendants.         FOURTEEN DAYS
14

15  _____/

16
                        ## Findings And Recommendations
17

I.       **Background**
18

         Plaintiff Dorian M. Aquino ("Plaintiff") is a prisoner in the custody of the California
19
Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in
20
forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding
21
on Plaintiff's first amended complaint against Defendants R. Jordt for deliberate indifference in
22
violation of the Eighth Amendment.  On December 2, 2011, Defendant filed a motion for
23
summary judgment.  Defs.' Mot. Summ. J., Doc. 23.  Plaintiff did not file an opposition.[1]  The
24
matter is submitted pursuant to Local Rule 230(l).
25

26
_____
27         [1] Plaintiff was informed of the requirements for opposing a motion for summary
judgment by a Court order on October 19, 2010.  Second Informational Order, Doc. 17; *see Rand
28  v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

                                            1

**II.    Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

2

1   *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

2   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3   nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

4   *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

5          In the endeavor to establish the existence of a factual dispute, the opposing party need not

6   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8   trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

9   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

11  amendments).

12         In resolving a motion for summary judgment, the court examines the pleadings,

13  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

14  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

15  U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

16  court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

17  *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

18         Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

20  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

21  issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

22  **III.   Statement Of Facts**

23         Plaintiff was an inmate at the California Substance Abuse Treatment Facility in Corcoran,

24  California ("CSATF") in February of 2009.  Pl.'s Am. Compl., Doc. 13.[2]   Defendant Robert

25  Jordt ("Defendant") was a correctional officer at CSATF in February 2009.  Def.'s Decl. ¶ 1.

26

27

28         [2] Defendant cites to a declaration from Defendant's counsel as supporting documentation.
    However, no such declaration was filed with the Court.

1  Plaintiff claims to have fallen from an upper bunk on February 27, 2009.  Pl.'s Am. Compl.

2  Plaintiff has accused Defendant of deliberate indifference to his safety by not honoring a chrono

3  (Physician's Order) for a lower bunk issued for a seizure disorder.  *Id.*  Plaintiff accuses

4  Defendant of another failure to honor the chrono by placing him on an upper tier, but still a lower

5  bunk, after Plaintiff returned from the hospital following the fall.  *Id.*

6      On February 27, 2009, Defendant was an officer on Floor 1, Building 2 at CSATF.

7  Def.'s Decl. ¶ 1.  As a floor officer, Defendant does not have the authority to move an inmate on

8  his own.  *Id.* ¶ 3.  When Defendant would receive notice from an inmate that he had a chrono

9  requiring something such as a lower bunk, he would take the information to the yard sergeant

10  who would prepare paperwork on that request. The request would then go to a sergeant in Central

11  Control who would enter the information into the computer.  *Id.* ¶ 3.

12      If an inmate is to be moved, the form that is generated is called an "Inmate

13  Transfer/Housing Assignment Change", a form numbered GA 154.  *Id.*  The sergeant in Central

14  Control will record the time that the assignment change is made in the upper left hand corner of

15  form GA 154.  *Id.*  The actual change in an inmate's bunk assignment is made within several

16  hours, and the inmate is notified of the change through the public address system so that he

17  knows that his bunk assignment has changed.  *Id.* ¶ 4.

18      The information on the change of Plaintiff's bunk assignment was entered into the

19  computer at 10:20 on the morning of February 26, 2009.  *Id.* ¶ 5, and Ex. A, form GA 154.

20  Because the information on Plaintiff's bunk assignment was entered into the computer at 10:20

21  on the morning of February 26, 2009, Plaintiff would have been physically transferred to a lower

22  bunk by approximately noon on that date, and before the morning of February 27, 2009.  Def.'s

23  Decl. ¶¶ 4 and 6.

24      After his fall, Plaintiff filled out a Health Care Services Request Form, CDC Form 7632.

25  An inmate completes the upper part of this form when he feels he needs to be seen for a health

26  problem.  *Id.* ¶ 7.  Plaintiff filled out the form indicating he had had a seizure, had fallen off a

27  top bunk and was having severe back pains and headaches.  *Id.*, and Ex. B.  Plaintiff recorded his

28  housing as "203 Low" on this form. This is the same designation as was used in the GA 154

4

1  form, which refers to his housing as "203 L".  Both of these mean that Plaintiff was in bed 203 in

2  a lower bunk. Def.'s Decl. ¶ 7.

3       A great number of inmates approach Defendant to request housing accommodation

4  changes as he goes about his duties, and he cannot recall them all.  *Id.* ¶ 8.  Had Plaintiff come to

5  Defendant and requested a change to a lower bunk, and had a chrono substantiating the need for a

6  lower bunk, Defendant  would have passed the information onto the yard sergeant.  *Id.*  Someone

7  alerted the yard sergeant of a request for a bunk change on Plaintiff's part because a change was

8  made on February 26, 2009.  *Id.*

9       At 7:45 on the morning of February 27, 2009, Defendant was monitoring Building No. 2's

10 inmates as they returned from the morning meal.  He was standing at the front door of Building

11 No. 2 when he observed Plaintiff starting to pass the building on his way back from chow hall.

12 *Id.* ¶ 9.  Defendant inquired of Plaintiff as to why he was passing the building.  *Id.*  Plaintiff told

13 Defendant that he was doing so because he would get his medications after chow.  *Id.*  Defendant

14 then sent Plaintiff to the medication line and observed him receiving his morning medications

15 there.  *Id.*  About 20 minutes later, (approximately 8:05 a.m.), Defendant observed Plaintiff

16 leaving the chow hall for a second time.   Defendant told Plaintiff that he would be getting a

17 Rules Violation Report for going to breakfast twice.  *Id.* Plaintiff tried to explain to Defendant

18 that he had to take his medication after he ate, and so needed to go to the chow hall for the

19 second time to get food.  *Id.*  Defendant had medical staff check Plaintiff's medication schedule

20 and Defendant determined that Plaintiff's medication was to be taken before he ate, not after a

21 meal. *Id.*  Plaintiff was found by CSATF staff on the floor at 8:10 on the morning of February 27,

22 2009. This was approximately five minutes after Defendant watched him obtain a second

23 breakfast and informed him that Defendant was going to issue a Rules Violation Report.  *Id.* ¶

24 10, and  Ex. C.

25 **IV.   <u>Analysis</u>**

26      To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

27 conditions must involve "the wanton and unnecessary infliction of pain . . . ."  *Rhodes v.*

28 *Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

1    prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

2    personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v.*

3    *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

4    unsafe conditions of confinement, prison officials may be held liable only if they acted with

5    "deliberate indifference to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124,

6    1128 (9th Cir. 1998).

7            The deliberate indifference standard involves an objective and a subjective prong.  First,

8    the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v.*

9    *Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second,

10   the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .

11   . ." *Id.* at 837.  Thus, a prison official may be held liable under the Eighth Amendment for

12   denying humane conditions of confinement only if he knows that inmates face a substantial risk

13   of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45.

14   Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk,

15   or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  *Id.* at 844-45.

16   Mere negligence on the part of the prison official is not sufficient to establish liability, but rather,

17   the official's conduct must have been wanton.  *Id.* at 835; *Frost*, 152 F.3d at 1128.

18           Defendant contends that he was not deliberately indifferent to a substantial risk of serious

19   harm to Plaintiff.  Def.'s Mem. P. & A. 7:13-8:8.  Defendant contends that he had no authority to

20   move Plaintiff from an upper bunk to a lower bunk.  *Id.*  Additionally, Defendant contends that

21   Plaintiff had received a new bunk assignment for a lower bunk on February 26, 2009, one day

22   prior to the alleged fall from an upper bunk.  *Id.* Defendant contends that Plaintiff's alleged fall

23   on February 27, 2009 had nothing to do with being on the upper tier instead of the lower tier.  *Id.*

24           Construing the undisputed facts in the light most favorable to Plaintiff as the non-moving

25   party, the Court finds that there is no genuine dispute of material fact.  There is no evidence

26   which raises a genuine dispute of material fact as to Defendant's knowledge of Plaintiff's

27   changed accommodation to a lower bunk.  Based on the undisputed facts, Plaintiff had received a

28   lower bunk accommodation on February 26, 2009, one day prior to Plaintiff's alleged fall.  There

1    is no evidence which links Defendant's actions to any knowledge of Plaintiff's lower bunk

2    accommodation.  There is also no genuine dispute of material fact with regards to whether

3    Plaintiff was on a lower tier or upper tier bunk.  Based on Plaintiff's allegations, the fall occurred

4    because he had a seizure and fell from the top bunk.  There is no evidence that a lower tier or

5    upper tier made any difference.  The only evidence of an interaction between Defendant and

6    Plaintiff on February 27, 2009 indicated that Defendant was going to charge Plaintiff with a

7    Rules Violation Report for going to breakfast twice.  That fact does not raise a genuine material

8    dispute.

9         Even if Defendant was aware of Plaintiff's chrono, Plaintiff had received a lower bunk

10   accommodation one day prior to the alleged fall.  Per Defendant's usual practice, after receiving

11   notice of a physician-ordered chrono for Plaintiff to receive a lower bunk, he would have notified

12   the yard sergeant, who then notifies the Central Control sergeant, who then issues the Inmate

13   Transfer/Housing Assignment Change, form GA 154, within several hours.  Because the GA 154

14   form was issued by 10:20 a.m. on February 26, 2009, the housing change would generally occur

15   by noon of that day, and before the alleged fall.  Thus, even assuming that Defendant was

16   notified of the chrono, there is no evidence that indicates he acted with deliberate indifference.

17   **V.    Conclusion And Recommendation**

18        Based on the foregoing, it is HEREBY RECOMMENDED that:

19        1.    Defendant Jordt's motion for summary judgment, filed December 2, 2011, should

20              be GRANTED in full;

21        2.    Summary judgment should be granted in favor of Defendant and against Plaintiff

22              for the sole Eighth Amendment claim; and

23        3.    Judgment should be entered accordingly.

24        These Findings and Recommendations will be submitted to the United States District

25   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen**

26   **(14) days** after being served with these Findings and Recommendations, the parties may file

27   written objections with the Court.  The document should be captioned "Objections to Magistrate

28   Judge's Findings and Recommendations."  A party may respond to another party's objections by

7

1    filing a response within **fourteen (14) days** after being served with a copy of that party's

2    objections.  The parties are advised that failure to file objections within the specified time may

3    waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th

4    Cir. 1991).

5         IT IS SO ORDERED.

6         **Dated:**   **June 11, 2012**              **/s/ Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE